(974 P.2d 609)

No. 79,597

DAVID JOE EDWARDS, *Appellant,* v. KLEIN TOOLS, INC., *Appellee.*

Opinion filed January 29, 1999.

*Timothy A. Short,* of Spigarelli, McLane & Short, of Pittsburg, for appellant.

*Wade A. Dorothy* and *Douglas M. Greenwald,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellee.

Before BRAZIL, C.J., ROYSE and GREEN, JJ.

GREEN, J.: David Joe Edwards appeals from an order of the Kansas Workers Compensation Board (Board). On appeal, Edwards contends that the Board erroneously calculated his average wage. We agree and reverse and remand for recalculation of Edwards' average wage.

Edwards worked for Klein Tools, Inc., for approximately 16 years and was earning $12.87 per hour. While attempting to move a die block in May 1994, Edwards twisted his back. He felt a sharp pain around his belt line. He reported his injury to his supervisors. When Edwards was released to return to work, he was limited to light-duty work.

Edwards again injured his back in June 1994, developing a debilitating pain in the back of his leg. In September 1994, he stopped work because of the leg pain. In October 1994, a physician determined that the leg pain was caused by a herniated disc. Another physician linked the disc problem to the on-the-job back injuries.

In January and February 1995, Edwards filed applications for workers compensation hearings, which were consolidated. Although he received a physician's release for light-duty work in May

1995, Klein Tools refused to allow him to return to work without a no-limitation release. Edwards then began working at a service station, performing light-duty work and earning $6 per hour. More than a year later, in July 1996, Klein Tools offered him a position as a grinder at $9.05 per hour, which Edwards declined.

The parties stipulated to injury on the job, notice, compensability, and a 10 percent permanent partial general body impairment; they also stipulated to an average pre-injury weekly wage of $718.06 and fringe benefits of $184.40. In February 1997, the administrative law judge calculated Edwards' average weekly wage based on the grinder position which he had refused. The Board affirmed the wage calculation.

The Act for Judicial Review and Civil Enforcement of Agency Actions, specifically K.S.A. 77-621(c), provides the grounds upon which relief may be granted in appeals of workers compensation awards entered on or after October 1, 1993. See K.S.A. 1997 Supp. 44-556(a). K.S.A. 77-621 provides:

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial *when viewed in light of the record as a whole*, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act." (Emphasis added.)

"Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, Syl. ¶ 2, 891 P.2d 422 (1995).

K.S.A. 1997 Supp. 44-510e(a) computes compensation based on loss of job performance ability "averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and *the average weekly wage the worker is earning after the injury*." (Emphasis added.)

Relying on *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995), the Board rejected Edwards' claim that he did not voluntarily take himself out

of the labor market or that he did not try to manipulate the workers compensation system. The Board's reliance on *Foulk* is misplaced.

In *Foulk*, this court interpreted an earlier version of the statute to include a good-faith requirement on the worker's part to find suitable employment following an injury. In *Foulk*, the employer offered a job to the injured worker. Although the job was within the worker's ability to perform, the worker refused to attempt the job. The worker then claimed the post-injury average weekly wage was zero, which would have had the effect of increasing the award. The court rejected this attempt and imputed the salary of the offered job, holding:

"The legislature clearly intended for a worker not to receive compensation where the worker was still capable of earning nearly the same wage. Further, it would be unreasonable for this court to conclude that the legislature intended to encourage workers to merely sit at home, refuse to work, and take advantage of the workers compensation system." 20 Kan. App. 2d at 284.

Factually, this case is distinguishable from *Foulk*. Here, Edwards accepted the service station job only after Klein Tools refused to offer him a light-duty position. Moreover, Edwards had worked at the service station job for over a year before Klein Tools offered him a position within his work restrictions. This offer was made only a short time before the hearing and after almost all the discovery had been completed. Finally, the record indicates that the grinder job was temporary. Evidence was introduced that layoffs were planned at the plant and that the die production work would be transferred to another plant.

K.S.A. 77-621(c)(7) requires that we consider the "record as a whole" in determining whether the Board's findings are supported by substantial evidence. When viewed in light of the record as a whole, we determine that the Board erred in neglecting to consider the evidence mentioned in the preceding paragraph. Furthermore, the Board should have considered the entire time period between Edwards' last injury and Klein Tools' offer of the grinder position in calculating Edwards' average weekly wage. As a result, the Board's average weekly wage calculation is not supported by substantial competent evidence.

On remand, the Board should calculate Edwards' average weekly wage by considering the number of weeks unemployed, the number of weeks working at the service station before the job offer, and the number of weeks working at the imputed wage once the job was offered.

Reversed and remanded with directions.